versus Construction, excuse me, In-Ray Railworks Corporation. I apologize. Ms. Sankaran? Yes, may it please the court. My name is Anna Sankaran with Greenberg Charig. I represent the Appellate Construction Program Group, CPG. Before we dive into the arguments in this particular case, if the court would find it helpful, I thought it might be useful to walk through the two bankruptcy statutes that are in play. The first is the preference statute, Section 547B of the Bankruptcy Code, which allows a trustee, subject to certain defenses, to avoid transfers that the debtor made in the 90 days preceding bankruptcy. The purpose of the preference section is so that a trustee can seek an equality of distribution among unsecured creditors. Essentially, it allows a trustee to avoid all of the business transactions that the debtor engaged in 90 days prior to bankruptcy, despite the fact that the debtor may have received products and services in exchange for those payments that it's entitled to keep. In order to satisfy its burden, the trustee must establish six different elements to avoid a transfer. One, the transfer has to be in interest of the debtor and property. Two, the transfer has to be made to or for the benefit of a creditor. Three, the transfer is made on account of antecedent debt. Four, that the transfer was made while the debtor was insolvent. Five, that it was within the 90 days of the petition date. And six, that the transfer resulted in the creditor receiving a greater distribution than it would have in a hypothetical Chapter 7. Now, once a trustee has successfully avoided a transfer, we move to the second statute that's implicated, which is Section 550 of the Bankruptcy Code. Section 550, which is a claim that's not pleaded in the trustee's complaint in this case, and was abandoned when he withdrew his motion for leave, allows a trustee to recover the avoided preferences from, among others, an initial transferee or an entity for whose benefit a transfer was made. Now, the code doesn't define what an initial transferee is, but this court adopted the legal dominion and control definition set forth by the Seventh Amendment to the Financial. That was the Southeast Hotel Properties case. Dominion and control requires the ability to put the money to one's own use. So one cannot be considered an initial transferee if it was just a pass-through entity, if it didn't have the ability to put that money to its own use. The rationale behind this defense is that it is inequitable to permit recovery through a pass-through entity because there was no dominion and control. One can think of an example such as a Brinks truck that's delivering cash from a customer to its bank. The Brinks truck is just delivering the cash. It has no authority to do what it wants with that cash. It just simply is the conduit through which the cash is transported. There's a large body of case law that we cite in our brief that holds that entities that collect insurance premiums, for example, and have a legal obligation to pass that on to the insured are considered conduits as a matter of law. Preference jurisprudence also gives us specific instructions on how preference liability should be analyzed. In the Pony Express case, the 11th Circuit instructed when examining whether a party is a proper subject of a Section 550 claim, courts should evaluate the transaction in its entirety and make sure the conclusions are logical and equitable. And the Society General case also instructs that it's especially important to consider the goal of a law and the effect of a in areas of law such as bankruptcy jurisdiction that are so strongly rooted in equitable principles. CPG, like the Brinks truck example I gave you, was simply a pass-through entity in this case and did nothing other than take insurance premium that the debtor sent it and pass it on to the insurer to take. Let me ask you this. It's a little bit of a convoluted question which I apologize, but you have language in the agreement between CPG and TIG that says that CPG shall be liable for and shall pay, and that's notwithstanding whether the railroad gives them the money. So the second part of the question is a creditor is defined as an entity that has a claim against the debtor that arose at the time or before the order of relief, etc. Claim then goes on to list a whole slew of things, and the one thing that I might not be right, that's why I'm asking the question. One of those claims could be a contingent liability. So if the railroad did not pay CPG, wouldn't there exist a contingent liability? And I think the answer to your question is severalfold. The first piece of the answer to your question, it requires us to look at the entire managing and general agency agreement and not just the Section 5.1 provision that makes it primarily liable to pass money on. That's what creates the conduit relationship, right, the requirement that the money be passed on. But separate from that, the agreement also contains a provision that allows CPG to terminate coverage in the event of non-payment. So there isn't necessarily a contingent liability that there's perhaps possibly an instance where coverage is not terminated when it's not paid. Well, aren't we looking at this under Texas law? The Langdell versus Baltonite case seemed to have some kind of language that one provision can't make the other provision worthless. Absolutely, Your Honor, and I don't think that it makes it worthless. I think you actually have to there are three provisions that I encourage the court to look at, and I think they can all be read in harmony. Texas contract interpretation law instructs us to look at the contract with a utilitarian purpose, understanding the business motive and what is trying to be achieved. So remember, this managing general agency agreement is just one instrument in a regime to facilitate insurance coverage. In this case, there's the section that Your Honor pointed out, section 5.1, that talks about primary liability that the Langdell case has similar language to. We're not disputing the fact that there is a primary liability, but there's also other provisions in the agreement that can all be read in harmony. And what happens is, as the district court noticed and the bankruptcy court found, that that provision is designed, section 5.1, to make the managing general agent diligent in looking for whether premium has been paid and whether it's been collected. But it also has the ability to terminate coverage, so there isn't necessarily a contingent claim. But let me point, Your Honors, to a very similar situation that the bankruptcy court found useful when it decided that CPG was a mere conduit and not a creditor. It looked at the Pony Express case, which talks about a similar situation that Your Honor may be describing. In Pony Express, the debtor paid its insurance coverage to its broker. Broker forwarded the money on to the insurer. In the interim, the debtor's check was dishonored. And so the debtor or the estate of the debtor claimed that that money should be recoverable from the broker because there was a claim there, a contingent claim. It became a creditor at that point. The court looked at all of the factors and decided we need to step back and look at what this real transaction is and decided that the broker was a mere conduit in this case, that a creditor relationship, although maybe technically was created, wasn't really created because they didn't intend for the broker to become a creditor. It is the normal practice for the broker to forward premium on. There was no fee charged to the debtor for financing the premium for whatever period of time it remained unpaid. And ultimately, the Pony Express case, the 11th Circuit determined that that relationship should not be considered a creditor relationship. And I think that should instruct this court as well. So looking at the agreement in its entirety, it's not just Section 5.1 that operates by itself, but also even if it did, we need to step back from the situation, look at the whole transaction as a bankruptcy law requires us to do and in preference, litigation requires us to do and understand what this transaction truly is, which is CPG sending money along. Let's go back to shall be liable for shall pay language. Would you agree the bankruptcy court really didn't give us any reasoning as to why that language did not make CPG a guarantor of railway works for payment of the insurance premium to TIG? I just don't see a lot of rationale why she made that statement. I agree, Your Honor, that the bankruptcy court's does not contain very much of an explanation as to why it determined that the managing general agency agreement did not make CPG a guarantor. But I can explain to Your Honor several reasons why it doesn't make CPG a guarantor. Number one, as I explained, in a regular guarantee and the case law that the trustee cites with respect to liability as an entity for whose in this case, the managing general agent never agreed to indemnify the insured for its premium. It never because it also had the ability to terminate coverage in the event that it didn't and slept on its rights. You know, there may be an issue there. But as we look to the Pony Express case, the true transaction here is one of a conduit. So you're saying it can't. Let me ask you if this is correct. You're saying it cannot be a guarantor relationship if you have a right of cancellation. Yes, Your Honor. I mean, if we look at a normal guarantee, the whole credit term that's being extended is based on the identity of the guarantor and the guarantor doesn't have the ability to say, I don't want to do this anymore and step out. Same with assurity, which are the other types of cases that the trustee cites. But as my time is running out, I really want to draw this court to a really important issue, which is faced or posed by the district on page 10 of its decision when it creates this dual status ruling with respect to CPG, that CPG is both a conduit and an entity for whose benefit the transfer was made. And it says that this ruling is not at odds with Southeast Hotel. We contend that it is because it creates a logical inconsistency that renders the conduit defense in Southeast Hotel meaningless. And remember that no one is disputing that CPG is a conduit. That was a conclusion the bankruptcy court made, the district court also made it, and the trustee did not appeal that. What is at issue is, can you be a conduit and an entity for whose benefit a transfer was made under section 550 of the code? That is a question of first impression. It has not been decided by any other court so far that we can determine. And the reason that we argue, CPG argues that that cannot be the case, is based on the very language that your honors cite to. Section 5.1 of the agreement is what creates the conduit relationship. We cite in re-left way. Every conduit needs to establish a legal contractual obligation to pass the money on. If that legal contractual obligation is also the legal clause on which you can hold an entity liable as an entity for whose benefit, because by making the transfer, the debtor prevented you from breaching your automatically be an entity for whose benefit a transfer was made. So you might be accepted from liability as an initial transferee, but you're automatically always, because of that contractual right, always going to be an entity for whose benefit a transfer was made. Remember the equitable principles that support the Southeast decision and every other circuit that has adopted the conduit defense. It has implications not just to this particular case, but well beyond. Interpreting this agreement in a way that was never intended, because remember, there is the 5.1 obligation. There is the ability to terminate coverage. And then on top of that, there's also a provision section 3.4 of the agreement, which says this agreement should not be construed as an agreement of indemnification of the insured, whether that be for claims, whether it be for premium, whether it be for anything. So we have to put all of that together and really understand what this transaction was about. And we contend that putting all of that together and reading the agreement as the district court did turns the situation on its head. The truth is, is that CPG was a conduit. It was merely passing funds through. Everybody agreed it was a conduit. Southeast hotels and the conduit defense is rendered meaningless as a result of the district court's reading of the managing general agency agreement. Well, don't you think the district court was essentially making a policy argument that says, you know, that trustees should be able to get anything and everything he can get his hands on? That's what he did. Well, I think that's what trustees generally attempt to do for the good of the unsecured creditors in the case. I think in this particular case, the district court isolated one particular provision in the agreement in favor of the other provisions and the actual scheme. And I think that what is very important to look at, I mean, the court specifically said it doesn't find its conclusion contradictory to Southeast Hotel, which I think if you step back, the benefit that is measured in entity for whose benefit a transfer is made has to be something more than not breaching your obligation to pass the money on, right? It has to be something more than that. The Brinks truck that brings the money across, it's not going to do that pro bono. It's going to get some benefit for doing it. But other than that, it had no ability to decide where that money went. Same with CPG. It is undisputed that it put the money in its trust account, sent the money on to take from its trust account, never commingled the funds. That's not the issue. And in this case, I think the district court was incorrect. The other piece, I'm sorry, Your Honor, were you going to? I was just going to ask you a question, but you go ahead. You're still answering the question. Oh, no, I'm not. I was going to move on. So go ahead, Your Honor. OK, I just want to make sure I understand the structure of your argument. So you're saying if we agree that the transfers weren't recoverable under 550, that we don't have to address 547. Is that what you're saying? I think it's in two parts. You know, 550, first of all, was not pleaded. But let's let's resolve this case from 2001. Yes, but structurally, how are you? How are you putting this? Yes, you've been arguing both. And I'm trying to understand whether we need to reach both of them in order to decide the case, if we're to agree with you. OK, and I'm at time. May I finish the answer? Sure. So, Your Honor, I think the answer to the question is there's two elements, one in 547B and one in 550 that relate very closely. So one of the elements of 547B, which is can the transfer be avoided, is is the defendant a creditor of the debtor or an entity for whose benefit? And then that same analysis is used an entity for whose benefit in 550. But I think that to answer your honor's question, you can resolve the 550 question. It's not recoverable from CPG. We don't really care if it's avoidable or not. You can't recover it from CPG. You're not a party whose pot we can reach into. Correct. Because it was a mere conduit. OK, thank you. Thank you, Your Honor. Mr. Gutman. May it please the Court, Steve Gutman on behalf of the Litigation Trust of Railworks Corporation. This is not where I intended to start my argument. In fact, I found the conduit argument to be almost specious. But the court seems to have taken an interest in it. And therefore, I will address it first. And maybe it'll be the only thing I address. Section 5.1 of this agreement actually says a lot more than, hey, we have to pass the money on for a conduit. It says the agent shall be liable for and shall pay to company all net premiums attributable to policies produced here under, whether or not such premiums have been collected by agent, less commissions. They don't even have to have the money to have liability. OK, so to say that their only obligation is not to breach their agreement to pass on the premiums is incorrect. That's not the obligation. You addressed the right of cancellation. I'm not sure I understand how that has anything to do with anything. A right to cancellation doesn't mean you don't have a contingent for nonpayment instead of paying for paying for the money you owe. In other words, if there is no policy, there's nothing due and owing to TIG, is there? Depends when they cancel. The contingent claim that we're talking about in this case arises by virtue of step one, 5.1. So there's sort of a possibility of a claim. When they issue the policy, the contingent claim comes into existence at that moment in time. If they cancel the policy, there may be no avoidable payment because they did it by canceling the policy. So Railworks does not make a payment to TIG. So of course, there's no preference. But they didn't cancel any policy here. That doesn't change the fact that there is a contingent claim. And in fact, the money was paid here. So the contingent claim was satisfied or reduced. And strangely enough, although they withdrew their proof of claim, there's still a claim in the bankruptcy case by somebody in connection with this insurance. If we look at the procedural trail. But that's not really important that they filed a claim even after these payments were made. I'm not saying they have the claim. They withdrew it from themselves. And there's another related entity that has the claim. All I'm saying is that nobody canceled any policies. There were payments made. I don't think that's the point, at least as I understand that that's the point that you're opposing counsel's making. She's saying that you don't have a guarantee under Texas law. If you aren't unqualifiedly guaranteeing the payment, if you have a right to simply cancel the policy, that means cancelling the indebtedness, doesn't it? Let me answer that in two steps. Number one, guarantee is not the word in the bankruptcy code. Benefit is. I understand. She's talking about the Texas law there. I understand that. But we're talking about federal bankruptcy law here, which talks about benefit. As we cited in our brief, there are all kinds of benefits. It doesn't. How was it made for CPG's benefit? CPG wasn't extending the insurance coverage. CPG had an absolute obligation to TIG for every penny of premium that was outstanding. If it didn't cancel the pot, it didn't. It couldn't cancel the policy. By the time these were paid, that insurance coverage had been granted. If you look at it, I think her point, counsel, is that it's an issue of law as to whether you can have, irrespective of the facts of this case, can you have, and maybe I'm misunderstanding her, but can you have a guarantee relationship arise when the party who is the putative guarantor has the right to cancel the indebtedness that he or she or it is guaranteeing? Again, there's two answers to that. Number one, they didn't. They did not, and therefore, the indebtedness arose. It wasn't paid timely. That's in Judge Schneider's opinion. It wasn't paid timely, and therefore, when it was paid, it was already outstanding. That's number one. Number two, the right to cancel is not unique to this. Even under a guarantee, if somebody guarantees a bank loan that's on a line of credit, they can cancel their guarantee before the money is expended, lend out a million dollars today, and before they can lend the next I'm done. I've left the company. Take me off the hook. He's on the hook for the million that was lent. He's off the hook going forward. Does it matter who the check was made out to? No. It could have been paid directly to TIG, CPG. The check in this case was made out to TIG, was it not? No, it was made out to CPG. It was made out, okay. But it could have been paid directly to the insurance company. That's irrelevant? It doesn't matter? It doesn't matter. All that matters are the underlying facts, which are true in a guarantee case, and again, shorty cases, responsible officer cases. There's even a case we didn't get to cite it because it came out as the briefing was happening here. I called in Ray Vasu out of California, 499 bankruptcy, 864, 2013 case, where the payments to a senior mortgage, which then made equity available for the junior mortgage to attach to because now there was equity since some of the senior had been paid off. That's a preference too. These are all cases of benefit. All you need for benefit is, in this case, the reduction of the contingent claim, which as Judge Floyd pointed out, is the standard because you are a creditor if you hold a claim. You have a claim if you have a contingent claim, an equitable claim, any type of claim. And CPG had that claim against Rail Works as a result of Texas law, or I think Judge Berdara actually said it's Maryland law, but they're pretty much the same, because they had a right of not restitution, but a right of reimbursement or subrogation against Rail Works. If Rail Works had not made those payments that were due and payable and the insurance had already been expended, if Rail Works hadn't made that, CPG was on the hook under 5.1. They didn't have to receive the money first for that to happen. And any right they had to cancel the insurance to get rid of that claim accruing, they didn't exercise for whatever reason. All these cases they cite, Pony Express, and all these insurance cases, that's not the issue here. Those cases do deal with conduit liability. The question in those cases is, the money passed through the broker's hand, or in this case, the general, the managing agent's hand, and the trustee went after them simply because they touched the money. You apply southeast hotel properties to that, no legal dominion and control, because they only touched the money in order to pass it on to the insurance company. None of those cases dealt with an issue where you essentially have a guarantee or some independent obligation of the middleman to make sure those premiums get paid beyond the contractual obligation to pass it on. This isn't a contractual liability. It's an equitable claim because they have a right of reimbursement from RailWorks because they agreed with TIG to make sure those payments got paid even if they never got paid. Okay, let's back it up a little bit. It sounds to me like the foundation, the absolute utter bedrock foundation of your claim is that this was a guarantee. Well, it doesn't have to be a guarantee. Let's talk about, for instance, this court's decision in Ray Meredith. Okay, so you're saying that's not the foundation of your case? The foundation of the case is benefit. The benefit in this case is very similar. What was there to be guaranteed in this case if the payment was already made? The preference arises by virtue of the satisfaction of the outstanding debt. There has to be a creditor relationship, doesn't there? There is. And so, yes, but you're saying there is even though payment was made. That's the point. And Judge Schneider, as Judge Berdara pointed out, made that. Judge Berdara pointed out Judge Schneider's mistake. Every preference case involves a payment. If no payment is made, you don't have a preference. It's the satisfaction of the liability that creates a preference. If it wasn't satisfied, you have no preference. You have a claim. What happened here is very simple. RailWorks made this payment. If RailWorks had gone into bankruptcy without making this payment, CPG would have had to pay that money to TIG. That's the benefit. Very similar to guarantee, but guarantee is not the magic word here. That's the reason I said no guarantee. It is the benefit is the bedrock of the case. That's true. If you look at Inouye Meredith, this court's case on benefit, it had nothing to do with a guarantee. He had somebody who made a fraudulent conveyance. And in the process of making that fraudulent conveyance, the money passed through the hands of a company owned by his wife. The trustee sued the wife and said she got the benefit of this fraudulently conveyed company passing through her hands that was then transferred back out to him. And the trustee sued the wife. And this court didn't say, oh, those are the facts. No guarantee. I guess she wins. She, in fact, won, but it's because there was no benefit. Right. Now, though, did RailWorks have to make the payment for the benefit? Does it have to be or you're saying it's just enough that it was an incidental benefit? Because certainly RailWorks didn't intend it for the benefit of CPG. They intended it to get insurance coverage. So you're saying incidental beneficiary is is sufficient to be a beneficiary under the bankruptcy code. And do you have authority for that? Again, referring to Meredith, the court said that the determinative inquiry is whether the defendant actually received a benefit from the transfer. And the quote is debtors subjective intent to benefit an entity is not determinative of the question of whether the entity is the entity. Is it OK to be an incidental beneficiary? Is that you're saying? Absolutely. A guarantor is the same thing. They make this big deal again about the guarantee. The guarantor is not intended to be benefited when the principal pays the bank. It can be, but it doesn't have to be. In the responsible officer cases, the intended beneficiary doesn't have to be the responsible officer when the debtor makes a tax payment. In the other case we cited about the vendors with their factored receivables, they weren't the intended beneficiaries of of the payments. In all of these cases, the benefit is just that there is a benefit. And across the board, there is there is no need for a guarantee. And again, I think we mentioned this in one of the briefs. The word guarantee, at least in any of the avoidance sections, is not even in the bankruptcy. About distinguished appellate counsel's analogy to the Brinks truck. So again, in that type of case where you simply have this obligation to take the stack of cash and pass it on, you are fulfilling your duty, as she said, and you're not creating a claim because you have to breach your obligation. There's no claim there. But here, 5.1 doesn't say you have to pay us what you get. It goes much beyond that. It says whether or not such premiums have been due. Not by the fact that premiums are paid. So the cash never goes into the Brinks truck in this liability case. The liability arises before the money even gets to the truck. And that's why this operates essentially like a guarantee. But not important that it be called a guarantee. It's just important that they are reducing their liability under this provision. So you can get 100% of the money. Well, the 100% of the 75%, yes, as we've carved out the commissions because that's excluded from 5.1. Judge Bredar analyzed this case exactly as it should have been analyzed under the bankruptcy code. The preference statute is essentially a no-fault strict liability statute. There are other... So don't ever be a conduit or look out. You'll be the entity for whose benefits... You can be a conduit. That's... Okay. Are there cases that deal with dual status? There aren't any cases because... So we'd be saying for the first time that you can be both a mere conduit and a initial transferee for... No, no, no. An initial... This court has said, as it's every other, you cannot be in an initial transferee and a conduit. If you're an initial... What you can be, because a conduit doesn't make any sense in this context, is you can be a beneficiary and a conduit. And that comes back to my statement earlier that if the payment had gone straight to TIG, which is essentially their argument because they're saying they were conduits, so it's really as if it never touched their hands, it just passed through them. But if the check had been written to TIG, they'd still be liable as a beneficiary. That's the law. No different than if a debtor writes a check to the bank, the guarantor is liable. The guarantor doesn't have to touch the money. If in the Southeast Hotel Property case, the conduit issue was not raised as a defense. What this court actually did in that case was the trustee sued the second person to touch it, to touch the money. And that person said, hey, wait a second, I'm a subsequent transferee under 550A2 of the bankruptcy code, and I have certain defenses that an initial transferee doesn't have. That's what happened in Southeast. I guess sort of the elephant in the room here is why didn't you go after TIG? They're the ones who got the money. There are a number of reasons. I was not, I'm the trustee in the case, I was not counsel at this level. There's nothing in this record at all as to why they chose to go against the conduit? There's nothing in the record and nothing, and there's nothing. People actually got the money? We're not required to. The trustee has the choice in all the cases say that. The trustee may go after one or the other. Right, I'm just asking you whether the record shows it because it's certainly curious. The record doesn't show I can venture a guess the check was written to CPG. But again, it could have been written to TIG. That's not, it doesn't make a difference. But what I was going to end with the Southeast Hotel case is, so the trustee sued the second person to touch the money. This court came up with the dominion, the legal dominion and control test in that case. And what that did was turn the as a legal fiction. This court and every other one has said, just because you touch the money, that's not enough to make you an initial transferee. CPG put the money into a trust account, did it not? It did. How does that affect the analysis? Not at all. Again, conduit and beneficiary just aren't related concepts. There's nothing about, they didn't have to touch the money. What they did by putting it through the trust account is they made it as if they didn't touch the money. It's as if that check was written to TIG directly. They are still liable as a beneficiary of that transfer. There is no case that says otherwise. The big issue in this was back in the early, late 80s, I think it was 89 or early 90s, the DiPregio case out of the Seventh Circuit. The Seventh Circuit took another step and said, the insider preference provisions would take a preference back a whole year or instead of just 90 days. If you use this analysis, you have the benefit to the guarantor, who if he's an insider has one year liability, and then you can go after again, either party, the transferee or the beneficiary. In that case, they did it in reverse. Benefit to guarantor, go after the transferee, the bank, who's not an insider for a whole year. That's what the Seventh Circuit did. The bankruptcy code has been amended twice since to fix that problem because Congress says, we can only go after insiders for preferences for one year. Everybody else gets 90 days. But here, this is a 90-day issue. No court has ever disagreed with this analysis other than Judge Schneider. But no court has ever disagreed with this analysis. If you are a beneficiary, you are liable just as if you're the transferee. And you're saying you don't know who the check was made out to? I do know. It was made out to CBG. Oh, you said you were guessing that it was made out, I thought. I'm sorry? No, no, no. I was guessing that the reason why CBG was sued rather than TIG or both of them together, the check was written out. You have to remember, the trustee, myself in this case, I didn't come into this case till long after RailWorks' case had been filed. We received a whole bunch of records and the instruction to bring the appropriate avoidance actions. Some were fraudulent conveyances, some were everybody with the personal knowledge, which is why the whole issue with the whether the TIG is the creditor under 547B1 or whether CPG is the contingent creditor, there's no prejudice, which is what you need under Rule 15 if you use the TIG as creditor issue, because it's not in the complaint, but Judge Bredar said it's there. The whole issue of prejudice, there's no prejudice. They had all the records. They had all the witnesses. They had all the documents. The trustee had very, very little. RailWorks went on. It was a confirmed Chapter 11 case in which the debtor actually survived. That only happens in about 10% of Chapter 11 cases. So RailWorks went on with its business. It's still operating today. The trustee was left with a lot of litigation rights. So we went through the records we had. We conferred with RailWorks. We brought these lawsuits. But they had all the records from day one. They were involved in the transaction. And there's nothing that would be any different by the time the lawsuit was brought. 5.1 says what it says. The payment had been made. They were overdue. The benefit was conferred by virtue of those payments. And the preference happened. So there's really nothing that changed in the 10 years of litigation. I think one thing you haven't answered, though, and I'd like to give you an opportunity to answer, was that your opposing counsel has pointed us to the section of the party's contract that it was not an agreement for indemnification of the insured. That is the agreement between TIG and CPG. Does that make a difference in the analysis or not? And if so, why not? It doesn't make a difference. Judge Berdour essentially adopted our argument. So it's in his opinion. Right, but I'm asking you. Well, that it was our arguments. I will say it again. It's not in the right section of the agreement to mean what they say it means. It's not at odds with 5.1. And it anyhow doesn't mean that. If you read what it says, this is not a contract of agreement of indemnity of insureds. All that means is that they are not the insurance company. If you look at the broad power they had, they mentioned some of it. Who is they? CPG. They had the right to cancel policies. They also had the right to issue policies. They essentially acted on behalf of TIG for just about everything other than the premiums ultimately went to TIG. And the insurance company did what it did. And if there was a claim, the insurance company had to pay it. But they were, for all intents and purposes, the face of TIG in these insurance transactions. This says, don't get carried away, anybody who wants to bring a claim against our insurers. CPG is not the insurance company. It's not an agreement of indemnity of insureds. We're not going to provide any, CPG doesn't provide any insurance to an insured. That has to come back to TIG. Let me ask you just one other question that I don't think that you've answered in your presentation. And that is, if you look at the language of Section 547 that talks about the avoidance of the transfer and lists the conditions to or for the benefit of a creditor for or on account of an antecedent debt owed by the debtor. Okay, owed by the debtor to whom? Well, it's owed by the debtor. Do you have to owe it to the same creditor? Let me break that down. That particular provision, of course, talking about owed, antecedent debt owed, is not in contention. That's already been. Let me answer what I think the court is asking. There is a relationship between 547B1, to or for the benefit of a creditor, and 547B5 that allows such creditor to receive more than that creditor would receive in a liquidation case. And it sandwiches the rest of the provision. So any reference to the creditor, we're always dealing with the same creditor in the analysis. So you can analyze this as if TIG is the creditor throughout that section, and every element fits perfectly. Or you can analyze it as if CPG is the creditor. And as soon as you recognize that it is a creditor because it held this contingent claim that we've talked about, then it also fits right in line every single section. But it has to be the same creditor with regard to each element. Isn't that correct? Correct. But either way works. This is a type of preference claim where you have two ways you can prove it. Either TIG straight through, then you go to 550, and you can recover. Or CPG as the creditor, straight through, and then you go to 515, and you can recover. This can be proven on either one, CPG or TIG. I understand. Thank you. Thank you, Your Honor. I just wanted to address a few of the points raised by the questions to the appellee. One of the questions that Your Honor asked was, was there anything in the record as to and not CPG was sued? And there is something in the record, and I think it's just notable to raise. During the deposition of the 30B6 witness, which was the trustee himself, he testified that before filing the complaint, he knew of no contractual relationship between RailWorks and CPG, did no investigation into the business history between CPG and RailWorks, and did not review RailWorks books and records to determine even whether CPG was a creditor. I think his contention that that's the checks were written to was probably correct. That's the record 2217-2224. But I wanted to just note that for the record. To fall back on the point that Your Honor was just asking about, does 547B have to relate to the same creditor? And we cite case law in our brief, Miller v. Steinberg, on that point. And yes, it does. The district court incorrectly allowed the trustee to switch between creditors, that the entity who was the creditor was TIG because it was owed the insurance premiums. And remember what the complaint alleges, Your Honor, in paragraphs 11 and paragraphs 15. The complaint doesn't just say the transfer was made to any creditor. It says at all relevant times, CPG was a creditor of the debtor. And it alleges this twice in paragraphs 11 and 15. The trustee sought to amend his complaint to change that and make it broader to encompass the theory that he's arguing now based on section 5.1. But he withdrew that motion. And under the law that we cite, that constitutes abandoning those theories. Iqbal and Twombly require more for pleading standards. And again, section 550 is not pleaded at all, not the prima facie elements, let alone a single fact to support those elements. Let me ask one question. Yes. And that's going to I like your Brinks analysis, but what he is saying is that, and I would like to answer to this question, had this payment not been made to you, would you have had to go find the money and pay the next group down the line? So, yeah, there's two answers to that question. If the policies had not been termed, coverage had not been terminated. If this specific payment that they're trying to get back had not been specifically paid to you, would you have had to specifically pay it to the insurer? I don't know because this didn't happen. If CPG didn't take an action to terminate coverage at some point, I think there is some period of time that there was coverage before the payment came. So yes, that it would have had to do that. But again, maybe not to the same extent. But the other thing to look at in that same situation, the same exact circumstances as what arose in the Pony Express case, right? That premium came, was forwarded to insurer, then the debtor's check bounced. So there was this money that was fronted by the broker to the insurer. Doesn't that create a claim? The 11th Circuit looked at those facts, very similar to our case, and concluded, no. We stepped back. We look at what this transaction really was. CPG was a mere conduit. And remember, that is not in dispute. The bankruptcy court, who looks at preferences every day, determined that CPG was a conduit. The district court agreed CPG is a conduit. And third, it was not appealed. And going back to the Brinks analogy that you were talking about, so every conduit has the contractual obligation or a liability to pass that money on. Sometimes it might be only if you get it, you're required to pass it on, or whether you get it, you're required to pass it on. But his difference is that in the Brinks truck, that you're actually, you're given the funds and you pass it on. And what he is saying is that, unlike the Brinks truck, if you don't get the money, you still have to pass it on. And that's what he's arguing. I understand that. And I think the answer to that is twofold. One is looking at the hypothetical situation. We can't look at that. You're liable to pay it whether or not you get it. Well, you have to look at the legal relationship, though, don't you? You have to look at the legal relationship and that next clause, Section 1.2e of the Managing General Agency Agreement, which allows you to terminate coverage. And I'm not asking your honors to look at any extra contractual information, but just for your honors background so you understand how the transaction works. And you probably experienced this with your insurance coverage. You get paid for billed for premium in advance of the coverage being applicable. And so if payment doesn't come in, it'll get terminated. Generally speaking, this is hypothetically, it'll get terminated before coverage periods begins to run. In some cases, it might not. In that case, what I encourage your honors to look at is the Pony Express case, which is incredibly similar to the case we have. And again, the last point is to understand that allowing a conduit, we've all agreed that CPG is a conduit, to also be an entity for whose benefit turns southeast on its head. And I don't think that that was what was intended by this circuit or any other circuit who has adopted that equitable defense. Well, would you agree that the trustee essentially pursued the second alternative theory under Section 558-1? That's where he went. That's what he argued in his briefs. It's not what he alleged in his complaint. It's also specifically what he abandoned when he moved for leave to amend. But I agree with your honor. He argued at least part of that. He also argued that TIG was the creditor and tried to interchange who can satisfy which elements of a 547B claim. Okay. All right. Thank you very much. We'll ask the clerk to adjourn court. We'll come down to recouncil.
judges: Barbara Milano Keenan, Henry F. Floyd, Max O. Cogburn, Jr.